AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

District of New Mexico

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 1 4 2018

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Information associated with FaceBook USER ID 100003950446486 that is stored at premises controlled by FaceBook. | ) ) ) |

Case No. 18 MR 730

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(a)(1) | Kidnapping |
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S. Code § 1951 | Interference with Commerce by Threats or Violence (Hobbs Act) |

The application is based on these facts:
See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Daniel Fondse, Special Agent - FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/14/18

_____
*Judge's signature*

City and state: Albuquerque, New Mexico

Jerry H. Ritter   U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100003950446486 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Daniel Fondse, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain Facebook user ID that is stored at premises owned,

maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking

company headquartered in Menlo Park, California.  The information to be searched is described

in the following paragraphs and in Attachment A.  This affidavit is made in support of an

application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to

require Facebook to disclose to the government records and other information in its possession,

pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been so

employed since May, 2017.  Prior to that I was a sworn law enforcement officer in San Diego,

California, for three years.  I am currently assigned to the FBI's Albuquerque Violent Crime

Program, as such, I am authorized to investigate violent crimes.

3.      The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1201(a)(1) - Kidnapping, 18 U.S.C. § 2119 - Carjacking, 18 U.S. Code § 1951 - Interference with Commerce by Threats or Violence (Hobbs Act), 18 U.S.C. § 371 - Conspiracy, and 18 U.S.C. § 2 - Aiding and Abetting have been committed by Megan Bicondova.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## **PROBABLE CAUSE**

5.      On July 26, 2018 a kidnapping was reported to the Federal Bureau of Investigations (FBI), Albuquerque Division.  The reporting party stated they were unable to locate or contact the victim, a family member.  The reporting party stated they received approximately five phone calls on July 26, 2018 from person(s) alleging to have kidnapped the victim and who demanded money from the reporting party.  The phone number used to place the calls to the reporting party was blocked.  By analyzing cellular phone records obtained through exigent circumstances, FBI personnel determined phone number 505-582-4555 placed five phone calls on July 26, 2018 to the reporting party, which corresponded to the times the reporting party was contacted by the alleged kidnapper(s).  T-Mobile records show the subscriber of 505-582-4555 is Jose Ramirez and the subscriber name effective date was July 03, 2018.  The kidnapping victim later stated Jose Ramirez was known to them.  Ramirez is currently the subject of an active federal arrest warrant issued on July 27, 2018 for alleged violation of 18 U.S.C. § 1201(a)(1) - Kidnapping, 18 U.S.C. § 2119 - Carjacking, 18 U.S. Code § 1951 - Interference with Commerce by Threats or Violence (Hobbs Act), 18 U.S.C. § 371 - Conspiracy,

2

and 18 U.S.C. § 2 - Aiding and Abetting in relation to the previously described incidents.  Due to

the nature of the offenses he may be aware of the law enforcement investigation into this incident

and may be taking active measures to avoid law enforcement.  Ramirez's location remains

unknown.

      6.      Cell phone records show on July 26, 2018, 575-936-9494 placed at least two calls

to 505-582-4555 (Jose Ramirez's phone), during the time the kidnapping victim was held against

his will.  Furthermore, records showed approximately 50 attempted contacts between the 575-

936-9494 and Jose Ramirez's phone in the approximate three days following the kidnapping.  .

A law enforcement records check through open source databases showed the current user of 575-

936-9494 is Megan Bicondova

      7.      Pre-dawn video from outside the victim's residence on the morning of the

kidnapping showed a pick-up truck with what appeared to be light(s) on the roof and a utility

rack in the bed drive past the victim's driveway.  The vehicle returned several seconds later and

stopped near the victim's driveway, before driving out of the neighborhood.  The video showed

very little vehicle traffic in the victim's neighborhood until the time of the alleged kidnapping,

approximately 70 minutes later.

      8.      On July 27, 2018, the owner of a 1997 Dodge pick-up reported it stolen from the

residence at which Jose Ramirez stayed for approximately two weeks, terminating approximately

two days before the kidnapping.  The pickup was owned by a family member of Jose Ramirez

who regularly left the keys inside the vehicle.

      9.      On August 10, 2018, the stolen Dodge pick-up was recovered in Albuquerque,

NM.  The person in possession of the Dodge pick-up, F.M., told your affiant he purchased the

vehicle from a female who identified herself as Megan on approximately the day after the

kidnapping. F.M. positively identified Megan Bicondova in a photo lineup as the female who sold him the Dodge pick-up. The Dodge pickup had a utility rack and lights on the roof and was visually similar to the vehicle observed on video stopping in front of the victim's residence shortly before the kidnapping.

10.     The victim of the kidnapping stated a female was present at a location of his captivity. He described her as 5'6" in height with shoulder-length dirty blond hair, and a stocky, not skinny, build. Megan Bicondova's New Mexico Motor Vehicle Department information shows she was 5'3" in height, weighting 230 lbs, with shoulder-length, brown hair. F.M. described the woman who sold him the Dodge Pick-up as about 5'7" to 5'8" in height, with brown hair just past shoulder length and a very heavy build.

11.     Facebook ID 100003950446486, the subject of this document, is associated with a Facebook profile in the name of Megan Bicondova who lives in Deming, NM. Your affiant viewed the profile picture for this account, and it is visually similar to Megan Bicondova's New Mexico Motor Vehicle Department photograph. Facebook ID 100027174403011 is associated with a Facebook profile in the name of Jose Ramirez who lives in Rio Rancho, NM. The telephone number 505-582-4555, the same number used to make ransom demands during the kidnapping, is associated with Jose Ramirez's Facebook account. The profile picture for Jose Ramirez's account does not depict any person. Megan Bicondova is the only account on Jose Ramirez's Facebook friend list. Megan Bicondova's friend list is not publically accessible.

12.     Jose Ramirez is currently a fugitive and information relating to either Jose Ramirez's or Megan Bicondova's Facebook accounts may be useful in establishing his whereabouts for an arrest.

4

13.    On August 14, 2018 your affiant interviewed Megan Bicondova.  She confirmed her phone number is 575-936-9494.  She denied any involvement in a kidnapping and denied selling a work truck with a utility rack.

14.    Your Affiant knows from his training and experience that criminals frequently use electronic devices, such as cellular phones, to coordinate and promote criminal acts.  These communications can be in the form of calls, text messages or messaging applications built into the social media platforms including photographs, or videos. Social Media platforms can also contain information relating to user locations, personal posts, communications or other saved information which may constituted evidence.  Electronic communication can be used to coordinate with accomplices in criminal acts or for additional purposes such as making logistical arrangements, arranging transportation, or disposing of evidence.  Your Affiant knows from experience, most people carry a cellular phone on their person at all times.  Information regarding the locations and communications associated with the cellular telephone or use of social media are often useful and relevant as evidence in criminal investigations.

15.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

16.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical

5

address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

17.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations

6

to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

20.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

22.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as

7

webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

24.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

27.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

28.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

29.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date),

8

the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

30.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access,

use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

32.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

10

33.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## CONCLUSION

34.     Based on the forgoing, I request that the Court issue the proposed search warrant.

35.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

36.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Daniel Fondse
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on August 14, 2018

UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100003950446486 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities **from May 26, 2018 to August 14, 2018**;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **from May 26, 2018 to August 14, 2018**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)    All other records and contents of communications and messages made or received by the user **from May 26, 2018 to August 14, 2018**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)    All "check ins" and other location information;

(h)    All IP logs, including all records of the IP addresses that logged into the account;

(i)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)    All information about the Facebook pages that the account is or was a "fan" of;

(k)    All past and present lists of friends created by the account;

(l)    All records of Facebook searches performed by the account **from May 26 2018 to August 14, 2018**;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)    The types of service utilized by the user;

2

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(r)     All records pertaining to any physical locations recorded in association with this account or account user.

Facebook is hereby ordered to disclose the above information to the government within **14 Days** of service of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence, of violations of 18 U.S.C. § 1201(a)(1) - Kidnapping, 18 U.S.C. § 2119 - Carjacking, 18 U.S. Code § 1951 - Interference with Commerce by Threats or Violence (Hobbs Act), 18 U.S.C. § 371 - Conspiracy, and 18 U.S.C. § 2 - Aiding and Abetting involving Megan Bicondova including information pertaining to the following matters:

(a) All communications between Megan Bicondova and any other person as it relates the planning or execution of kidnapping, carjacking or conspiracy to commit such acts, including providing aid after act.

(b) All photos or statements constituting evidence of a kidnapping

(c) Friend list.

(d)  Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b.      such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                               Signature

2